IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SAMANTHA STINSON and JONATHAN STINSON,                    PLAINTIFFS
on behalf of themselves and on behalf of their minor
children, A.R.S. and A.W.S.; STEPHEN CALDWELL,
on behalf of himself and on behalf of his minor child, W.C.;
JOSEPH ARMENDARIZ, on behalf of himself and
on behalf of his minor children, M.A. and W.A.;
TALARA TAYLOR and SHANE TAYLOR, on behalf of
themselves and on behalf of their minor children, K.T. and M.T.;
CAROL VELLA, on behalf of herself and on behalf of
her minor children, E.M.V. and N.M.V.; DANIEL RIX, on behalf of
himself and on behalf of his minor children, A.R., J.R., and W.R.;
and LEAH BAILEY, on behalf of herself and on behalf of
her minor children, C.T. and D.T.

vs.                     CASE NO. 5:25-cv-05127-TLB

FAYETTEVILLE SCHOOL DISTRICT NO. 1;
SPRINGDALE SCHOOL DISTRICT NO. 50;
BENTONVILLE SCHOOL DISTRICT NO. 6;
and SILOAM SPRINGS SCHOOL DISTRICT NO. 21            DEFENDANTS

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, Fayetteville School District No. 1 ("Fayetteville Schools"), Springdale School District No. 50 ("Springdale Schools"), Bentonville School District No. 6 ("Bentonville Schools"), and Siloam Springs School District No. 21 ("Siloam Springs Schools," and collectively, the "Districts"), for their Brief in Support of their Motion to Dismiss ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(1) state as follows:

### I.     INTRODUCTION AND BACKGROUND

Arkansas Act 573 of 2025 ("Act 573" or the "Act") requires the display of the Ten Commandments in elementary and secondary school classrooms and libraries, and the Act includes specific requirements regarding the language of the Ten Commandments and the size of the displays. Doc. 2 at ¶¶ 21, 24-27. On June 11, 2025, the Plaintiffs in this case—a number of parents

on behalf of themselves and their children—filed a Complaint against the Districts, alleging that Act 573 is unconstitutional because it violates the Establishment Clause and the Free Exercise Clause of the First Amendment to the United States Constitution. *See id* at ¶¶ 137-154. Plaintiffs seek a declaration that Act 573 is unconstitutional and a preliminary injunction enjoining the Districts from displaying the Ten Commandments prior to Act 573's effective date on August 5, 2025. Doc. 2 at 34-35.

The Districts do not take a position as to the constitutionality of the Act and view themselves as nominal defendants now that the Arkansas Attorney General has intervened to defend the constitutionality of the Act. *See* Docs. 39, 40, & 42.[1] However, given the plain language of the Act and the position the Districts find themselves in with respect to compliance with the Act, the Districts file the instant Motion to Dismiss. Namely, under the plain language of the Act, the Districts are not required to make displays of the Ten Commandments unless the Districts or their Boards of Education receive voluntary donations of funds or compliant displays. *See id.* at ¶ 28. Presently, the Districts are not able to, or required to, comply with the Act because no donations, monetary or otherwise, have been made to the Districts. *See* Declaration of Dr. John Mulford, attached as **Exhibit A**; Declaration of Dr. Jared Cleveland, attached as **Exhibit B**; Declaration of Dr. Debbie Jones, attached as **Exhibit C**; Declaration of Shane Patrick, attached as **Exhibit D**.[2] The Districts therefore do not have any plans to implement such displays for the upcoming school year.

---

[1] Pursuant to Federal Rule of Civil Procedure 10(c), the Districts adopt and incorporate by reference the Motion to Dismiss filed by the Intervenor State of Arkansas to the extent applicable.

[2] The Court may consider matters outside the pleadings on a Rule 12(b)(1) motion to dismiss. *See Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) ("A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

Although the Act becomes effective on August 5, 2025, Doc. 2 at ¶ 3, there is no deadline for the Districts to comply because they can comply only if and when they receive voluntary contributions. Moreover, the Act has no penalties or any other enforcement mechanisms if the Districts fail to comply because the Districts may never be able to comply. Finally, Plaintiffs can only speculate as to any injury that may be suffered because the Districts have not posted any displays that are compliant with Act 573. As a result, Plaintiffs' claims are based only on the Districts' *potential* compliance with the Act. Because the Complaint does not allege (1) a concrete, particularized injury in fact, (2) traceability, or (3) redressability, Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction regardless of the constitutionality of the Act.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a party to raise fatal jurisdictional defects early. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) requires a court to dismiss a complaint if it lacks subject matter jurisdiction to hear a case. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The burden of proving the existence of subject matter jurisdiction lies with the Plaintiffs. *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013).

"Plaintiffs must "make a 'clear showing' that [they] are 'likely' to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). For a plaintiff to establish standing under Article III, the plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). That injury must be "concrete," "particularized," and "actual or imminent, not speculative." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Causation requires the Plaintiffs to demonstrate "that the injury was likely caused by the defendant . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). And "[t]o determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (internal quotations omitted).

### III. ARGUMENT

#### A. Plaintiffs' Claims Are Not Ripe.

The Plaintiffs' claims are not ripe and therefore should be dismissed. The purpose of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). "It is well settled that the ripeness inquiry requires the examination of both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Pub. Water Supply Dist. No. 10 of Cass Cnty. v. City of Peculiar*, 345 F.3d 570, 572 (8th Cir. 2003) (quoting *Abbott Labs.*, 387 U.S. at 149). "A party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000). Here, the Plaintiffs have not established either prong. "The 'fitness for judicial decision' inquiry goes to a court's ability to visit an issue . . . Whether a case is 'fit' depends on whether it would benefit from further factual development." *Pub. Water Supply*, 345 F.3d at 573 (quoting *Neb. Pub. Power Dist.*, 234 F.3d at 1038)).

If a case is "contingent on future possibilities," as is the case here, it is less likely to be ripe. *Id*. Act 573 requires the Districts to make the displays only "[i]f funds under subsection (b) of this section are available . . . ." Subsection (b) of the Act states that "[t]he copies or posters authorized under this section shall either be donated or purchased solely with funds made available through voluntary contributions to the local school boards, local building governing entity, or the Building Authority Division." Because the voluntary contributions will come from outside persons or groups, compliance with Act 573 is completely out of the Districts' control. The Act's express use of the phrase "if funds . . are available" makes the applicability of the Act "contingent on future possibilities." *Pub. Water Supply*, 345 F.3d at 573. Further, because there is no guarantee that the Districts will ever receive such voluntary contributions, and certainly not in the near term, the case is not ripe.

Plaintiffs likewise flunk the hardship prong. Plaintiffs must allege that they have "sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (internal quotations and citations omitted). "Abstract injury is not enough." *Id*. "The plaintiffs need not wait until the threatened injury occurs, but the injury must be certainly impending." *Pub. Water Supply*, 345 F.3d at 573 (internal quotations omitted).

This is not the ordinary case where the Act goes into effect on August 5, 2025, *see* Doc. 2 at 2, and all persons must immediately comply. Rather, in this case, the Districts do not have to comply until they receive voluntary contributions. There is no deadline for compliance or penalty for noncompliance in the Act, in seeming recognition of the fact that the Districts may never be able to comply. To date, the Districts have not yet taken any steps to comply with the Act because no compliant donations, monetary or otherwise, have been provided to the Districts or their Boards

5

of Education. And the Districts are not aware of any "voluntary contributions to the local school boards" of funds to be used for the displays required under the Act or the Ten Commandment displays themselves. *See* Ex. A-D. As a result, the Plaintiffs are not immediately in danger of sustaining some direct injury. Because the District cannot comply with the Act without voluntary contributions, any alleged injury the Plaintiffs might face is not certainly impending, and Plaintiffs' claims are not ripe.

**B. Plaintiffs Lack Article III Injury, Traceability, and Redressability.**

The same considerations are relevant for Plaintiffs' lack of Article III standing. Plaintiffs bear the burden of establishing all the elements of standing. *Spokeo*, 578 U.S. at 338. Therefore, each Plaintiff "must show that [they have] suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy*, 603 U.S. at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409) (2013)). Because Plaintiffs have not (and cannot) establish any of these three elements, their claims should be dismissed.

### 1. *Plaintiffs Have Not Demonstrated a Concrete, Particularized, Actual, or Imminent Injury in Fact*.

"An injury in fact must be 'concrete' meaning that it must be real and not abstract." *FDA*, 602 U.S. at 381 (quoting *TransUnion*, 594 U.S. at 424). "Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Id*. For Establishment Clause claims, a plaintiff "has suffered an injury for purposes of standing if he or she has experienced 'direct and unwelcome personal contact with the alleged establishment of religion.'" *Virden v. Crawford County*, No. 2:23-cv-2071, 2023 WL 5944154, at *3 (W.D. Ark. Sept. 12, 2023) (quoting *Am. Humanist Assoc. v. Baxter Cnty.*, 143 F. Supp. 3d 816, 821-22 (W.D. Ark. 2015)). Here, none of the Plaintiffs has alleged that they have seen any

6

display that complies with Act 573. In fact, the Complaint implicitly acknowledges this by its repeated use of the auxiliary verb "will" in conjunction with any alleged injuries the Plaintiffs may face, indicating that those injuries have not yet occurred. *See*, *e.g.*, Doc. 2 at ¶ 141 ("As a result of the Ten Commandments display mandated by Act 573, Arkansas students—including the minor-child Plaintiffs—*will be* unconstitutionally coerced into religious observance, veneration, and adoption of the state's favored religious scripture, and they *will be* pressured to suppress their personal religious beliefs and practices, especially in school to avoid the potential disfavor, reproach, and/or disapproval of school officials and/or their peers.") (emphasis added). The Complaint admits that the law has not gone into effect yet. *Id*. at ¶ 3 ("The Act, which takes effect on August 5, 2025 . . . ."). Therefore, Plaintiffs have never seen a display that is compliant with Act 573, so they cannot establish a "concrete, particularized, and actual or imminent injury." *Murthy*, 603 U.S. at 57.

Additionally, as explained above, the Districts cannot post Ten Commandments displays under Act 573 unless funds are made available through private donations or such displays are donated. No such funds or compliant displays have been provided to the Districts. *See* Ex. A-D to Mot. to Dismiss. The Plaintiffs may only face an injury if private donations are provided to the Districts for the implementation of the requirements of Act 573. Therefore, at this point, the Districts cannot take any steps to comply with the Act, so the Plaintiffs cannot say that any alleged injury is "concrete," "particularized," or "imminent." *Id*.

### 2. *Plaintiffs Have Not Demonstrated That Any Alleged Injury is Fairly Traceable to the Districts' Conduct.*

Plaintiffs' failure to allege an injury-in-fact means that Plaintiffs have also failed to show "any concrete link between their injuries and the [D]efendants' conduct." *Id*. at 76. That link "must not be too speculative or too attenuated." *FDA*, 602 U.S. at 383. Although Plaintiffs

7

ultimately attack Act 573, they correctly do not suggest that the Districts somehow "caused" Act 573. Instead, they shift the blame to alleged harms from unspecified Act 573 displays. But the Complaint does not link those alleged harms to the Districts. The factual allegations in the Complaint do not mention any of the Districts and do not allege any ongoing or intended conduct by any of the Districts. *See* Doc. 2 at ¶¶ 21-136. This is not surprising because none of the Districts have taken any steps to comply with the Act, and in fact cannot comply because they lack the funds or other donations required by the Act to do so. Plaintiffs cannot actually draw a link between any particular plaintiff and any particular District. Their allegation that the Districts "will unavoidably violate Plaintiffs' rights," Doc. 2 at ¶¶ 144, 153, therefore, "is too speculative or otherwise too attenuated to establish standing." *FDA*, 602 U.S. at 390.

        **3.**     ***Plaintiffs Have Not Demonstrated That Their Injuries Are Redressable.***

"The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" *Id.* at 380-81 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008)). "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)). When a defendant has not harmed the plaintiff, "there is no injury for a federal court to redress." *Casillas*, 926 F.3d at 332. That is the case here. The Plaintiffs have not alleged an Article III injury-in-fact, let alone an injury traceable to a particular District. Accordingly, "there is no injury for [this] federal court to redress." *Id*. Therefore, because Plaintiffs have not established an injury-in-fact, causation, or redressability, the Districts respectfully request that the Court dismiss the Plaintiffs' Complaint for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, Defendants, Fayetteville School District No. 1, Springdale School District No. 50, Bentonville School District No. 6, and Siloam Springs School District No. 21 request that this Court deny grant their Motion to Dismiss, dismiss the Complaint without prejudice, grant the Districts' fees and costs, and for all just and proper relief to which they may be entitled.

Respectfully submitted,

Marshall S. Ney, Ark. Bar No. 91108
Katherine C. Campbell, Ark. Bar No. 2013241
Sarah P. Smith, Ark. Bar No. 2022189
FRIDAY, ELDREDGE & CLARK, LLP
3350 S. Pinnacle Hills Parkway, Suite 301
Rogers, AR 72758
Office: (479) 695-6040
Facsimile: (501) 244-5389
mney@fridayfirm.com
kcampbell@fridayfirm.com
ssmith@fridayfirm.com