IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**SAMANTHA STINSON and JONATHAN STINSON,**  **PLAINTIFFS**
**on behalf of themselves and on behalf of their minor**
**children, A.R.S. and A.W.S.; STEPHEN CALDWELL,**
**on behalf of himself and on behalf of his minor child, W.C.;**
**JOSEPH ARMENDARIZ, on behalf of himself and**
**on behalf of his minor children, M.A. and W.A.;**
**TALARA TAYLOR and SHANE TAYLOR, on behalf of**
**themselves and on behalf of their minor children, K.T. and M.T.;**
**CAROL VELLA, on behalf of herself and on behalf of**
**her minor children, E.M.V. and N.M.V.; DANIEL RIX, on behalf of**
**himself and on behalf of his minor children, A.R., J.R., and W.R.;**
**and LEAH BAILEY, on behalf of herself and on behalf of**
**her minor children, C.T. and D.T.**

**vs.**               **CASE NO. 5:25-cv-05127-TLB**

**FAYETTEVILLE SCHOOL DISTRICT NO. 1;**
**SPRINGDALE SCHOOL DISTRICT NO. 50;**
**BENTONVILLE SCHOOL DISTRICT NO. 6;**
**and SILOAM SPRINGS SCHOOL DISTRICT NO. 21**               **DEFENDANTS**

### RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants, Fayetteville School District No. 1 ("Fayetteville Schools"), Springdale School District No. 50 ("Springdale Schools"), Bentonville School District No. 6 ("Bentonville Schools"), and Siloam Springs School District No. 21 ("Siloam Springs Schools," collectively, the "Districts"), for their Response to Plaintiffs' Motion for Preliminary Injunction ("Response") state as follows:

### I.   INTRODUCTION AND BACKGROUND

Arkansas Act 573 of 2025 ("Act 573" or the "Act") requires the display of the Ten Commandments in elementary and secondary school classrooms and libraries, and the Act includes specific requirements regarding the language of the Ten Commandments and the size of the displays. Doc. 2 at ¶¶ 21, 24-27. On June 11, 2025, the Plaintiffs in this case—a number of parents

on behalf of themselves and their children—filed a Complaint against the Districts, alleging that Act 573 is unconstitutional because it violates the Establishment Clause and the Free Exercise Clause of the First Amendment to the United States Constitution. *See id* at ¶¶ 137-154. Plaintiffs seek a declaration that Act 573 is unconstitutional and a preliminary injunction enjoining the Districts from displaying the Ten Commandments prior to Act 573's effective date on August 5, 2025. Doc. 2 at 34-35.

The Districts do not take a position as to the constitutionality of the Act and view themselves as nominal defendants now that the Arkansas Attorney General has intervened to defend the constitutionality of the Act. *See* Docs. 39, 40, & 42.[1] However, given the plain language of the Act and the position the Districts find themselves in with respect to compliance with the Act, the Districts file the instant opposition to Plaintiffs' Motion for Preliminary Injunction. Namely, under the plain language of the Act, the Districts are not required to make displays of the Ten Commandments unless the Districts or their Boards of Education receive voluntary donations of funds or compliant displays. *See id.* at ¶ 28. Presently, the Districts are not able to, or required to, comply with the Act because no donations, monetary or otherwise, have been made to the Districts. *See* Ex. A-D to Defendants' Mot. to Dismiss. And although the Act becomes effective on August 5, 2025, Doc. 2 at ¶ 3, there is no deadline for the Districts to comply with the Act, and there are no penalties or any other enforcement mechanisms if the Districts fail to comply with the Act. The Districts therefore do not have any plans to implement such displays for the upcoming school year.

---

[1] Pursuant to Federal Rule of Civil Procedure 10(c), the Districts adopt and incorporate by reference the Motion to Dismiss filed by the Intervenor State of Arkansas to the extent applicable.

Because Plaintiffs' claims are based only on the Districts' *potential* compliance with the Act, the Plaintiffs' claims are not ripe, and the Plaintiffs lack standing. Additionally, Plaintiffs have not demonstrated irreparable harm or that the public interest and the balance of the potential harms between the parties weigh in favor of the Plaintiffs. Therefore, Plaintiffs' Motion for Preliminary Injunction should be denied.

## II.    LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted). Generally, in issuing a preliminary injunction, the district court considers: (1) the threat of irreparable harm to the moving party; (2) the balance between this harm and the injury that granting the injunction will inflict on the non-moving party; (3) the probability that the moving party will succeed on the merits; and (4) the public interest. *See Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 118 (8th Cir. 1981) (en banc). For an injunction to be appropriate, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011).

"When considering standing at the preliminary injunction stage, [the Court] assume[s] the complaint's allegations are true and view[s] them in the light most favorable to the plaintiffs." *GLBT Youth in Iowa Schs. Task Force v. Reynolds*, 114 F.4th 660, 667 (8th Cir. 2024). Plaintiffs must also "make a 'clear showing' that [they] are 'likely' to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). For a plaintiff to establish standing under Article III, she must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578

U.S. 330, 338 (2016). That injury must be "concrete," "particularized," and "actual or imminent, not speculative." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Causation requires the Plaintiffs to demonstrate "that the injury was likely caused by the defendant . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). And "[t]o determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (internal quotations omitted).

### III.    ARGUMENT

**A.    Plaintiffs Are Not Likely To Succeed on the Merits at this Juncture.**

Plaintiffs cannot presently show a likelihood of success on the merits because Plaintiffs' claims are not ripe and Plaintiffs lack Article III standing as set forth more fully in the Districts' Motion to Dismiss.[2]

**i.    Plaintiffs' Claims Are Not Ripe.**

First, Plaintiffs cannot establish that they are likely to succeed on the merits of their Establishment Clause and Free Exercise Clause claims because these claims are not ripe for adjudication by this Court. The purpose of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). "It is well settled that the ripeness inquiry requires the examination of both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Pub. Water Supply Dist. No. 10 of Cass Cnty. v.*

---

[2] Pursuant to Federal Rule of Civil Procedure 10(c), the Districts adopt and incorporate by reference their Motion to Dismiss and accompanying Brief in Support filed the same day as this Response.

4

*City of Peculiar*, 345 F.3d 570, 572 (8th Cir. 2003) (quoting *Abbott Labs.*, 387 U.S. at 149).  "A party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000).  Here, the Plaintiffs have not established either prong.  "The 'fitness for judicial decision' inquiry goes to a court's ability to visit an issue . . . Whether a case is 'fit' depends on whether it would benefit from further factual development." *Pub. Water Supply*, 345 F.3d at 573 (quoting *Neb. Pub. Power Dist.*, 234 F.3d at 1038)).

If a case is "contingent on future possibilities," as is the case here, it is less likely to be ripe.  *Id*.  Act 573 requires the Districts to make the displays only "[i]f funds under subsection (b) of this section are available . . . ."  Subsection (b) of the Act states that "[t]he copies or posters authorized under this section shall either be donated or purchased solely with funds made available through voluntary contributions to the local school boards, local building governing entity, or the Building Authority Division."  Because the voluntary contributions will come from outside persons or groups, compliance with Act 573 is completely out of the Districts' control.  The Act's express use of the phrase "if funds . . . are available" makes the applicability of the Act "contingent on future possibilities." *Pub. Water Supply*, 345 F.3d at 573.  Further, because there is no guarantee that the Districts will ever receive such voluntary contributions, and certainly not in the near term, the case is not ripe.

Plaintiffs likewise flunk the hardship prong.  Plaintiffs must allege that they have "sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (internal quotations and citations omitted).  "Abstract injury is not enough." *Id*.  "The plaintiffs need not

wait until the threatened injury occurs, but the injury must be certainly impending." *Pub. Water Supply*, 345 F.3d at 573 (internal quotations omitted).

This is not the ordinary case where the Act goes into effect on August 5, 2025, *see* Doc. 2 at 2, and all persons must immediately comply. Rather, in this case, the Districts do not have to comply until they receive voluntary contributions. There is no deadline for compliance or penalty for noncompliance in the Act, in seeming recognition of the fact that the Districts may never be able to comply. To date, the Districts have not yet taken any steps to comply with the Act because no compliant donations, monetary or otherwise, have been provided to the Districts or their Boards of Education. And the Districts are not aware of any "voluntary contributions to the local school boards" of funds to be used for the displays required under the Act or the Ten Commandment displays themselves. *See* Ex. A-D to Defendants' Mot. to Dismiss. As a result, the Plaintiffs are not immediately in danger of sustaining some direct injury. Because the District cannot comply with the Act without voluntary contributions, any alleged injury the Plaintiffs might face is not certainly impending, and Plaintiffs' claims are not ripe.

### ii. Plaintiffs Lack Article III Injury, Traceability, and Redressability.

The same considerations are relevant for Plaintiffs' lack of Article III standing. Plaintiffs bear the burden of establishing all the elements of standing. *Spokeo*, 578 U.S. at 338. Therefore, each Plaintiff "must show that [they have] suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy*, 603 U.S. at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409) (2013)). However, Plaintiffs have not established any of these three elements, and therefore they cannot establish a likelihood of success on their claims.

### 1. *Plaintiffs Have Not Demonstrated a Concrete, Particularized, Actual, or Imminent Injury in Fact.*

"An injury in fact must be 'concrete' meaning that it must be real and not abstract." *FDA*, 602 U.S. at 381 (quoting *TransUnion*, 594 U.S. at 424). "Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Id*. For Establishment Clause claims, a plaintiff "has suffered an injury for purposes of standing if he or she has experienced 'direct and unwelcome personal contact with the alleged establishment of religion.'" *Virden v. Crawford County*, No. 2:23-cv-2071, 2023 WL 5944154, at *3 (W.D. Ark. Sept. 12, 2023) (quoting *Am. Humanist Assoc. v. Baxter Cnty.*, 143 F. Supp. 3d 816, 821-22 (W.D. Ark. 2015)). Here, none of the Plaintiffs has alleged that they have seen any display that complies with Act 573. In fact, the Complaint implicitly acknowledges this by its repeated use of the auxiliary verb "will" in conjunction with any alleged injuries the Plaintiffs may face, indicating that those injuries have not yet occurred. *See*, *e.g.*, Doc. 2 at ¶ 141 ("As a result of the Ten Commandments display mandated by Act 573, Arkansas students—including the minor-child Plaintiffs—*will be* unconstitutionally coerced into religious observance, veneration, and adoption of the state's favored religious scripture, and they *will be* pressured to suppress their personal religious beliefs and practices, especially in school to avoid the potential disfavor, reproach, and/or disapproval of school officials and/or their peers.") (emphasis added). The Complaint admits that the law hasn't even gone into effect yet. *Id*. at 2 ("The Act, which takes effect on August 5, 2025. . . ."). Therefore, Plaintiffs have never seen a display that is compliant with Act 573, so they cannot establish a "concrete, particularized, and actual or imminent injury." *Murthy*, 603 U.S. at 57.

Additionally, as explained above, the Districts cannot post Ten Commandments displays under Act 573 unless funds are made available through private donations, or such displays are

donated. No such funds or compliant displays have been provided to the Districts as of the date of this filing. *See* Ex. A-D to Defendants' Mot. to Dismiss. The Plaintiffs may only face an injury if private donations are provided to the Districts for the implementation of the requirements of Act 573. Therefore, at this point, the Districts cannot take any steps to comply with the Act, so the Plaintiffs cannot say that any alleged injury is "concrete," "particularized," or "imminent." *Id*.

**2.** ***Plaintiffs Have Not Demonstrated That Any Alleged Injury is Fairly Traceable to the Districts' Conduct.***

**3.** Plaintiffs' failure to allege an injury-in-fact means that Plaintiffs have also failed to show "any concrete link between their injuries and the [D]efendants' conduct." *Id*. at 76. That link "must not be too speculative or too attenuated." *FDA*, 602 U.S. at 383. Although Plaintiffs ultimately attack Act 573, they correctly do not suggest that the Districts somehow "caused" Act 573. Instead, they shift the blame to alleged harms from unspecified Act 573 displays. But the Complaint does not link those alleged harms to the Districts. The Factual Allegations in the Complaint do not mention any of the Districts and do not allege any ongoing or intended conduct by any of the Districts. *See* Doc. 2 at ¶¶ 21-136. This is not surprising because none of the Districts have taken any steps to comply with the Act, and in fact cannot comply because they lack the donations required by the Act to do so. Plaintiffs cannot actually draw a link between any particular plaintiff and any particular District. Their allegation that the Districts "will unavoidably violate Plaintiffs' rights," Doc. 2 at ¶¶ 144, 153, therefore, "is too speculative or otherwise too attenuated to establish standing." *FDA*, 602 U.S. at 390. ***Plaintiffs Have Not Demonstrated That Their Injuries Are Redressable.***

"The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" *Id*. at 380-81 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008)). "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)). When a defendant has not harmed the plaintiff, "there is no injury for a federal court to redress." *Casillas*, 926 F.3d at 332. That is the case here. The Plaintiffs have not alleged an Article III injury-in-fact, let alone an injury traceable

to a particular District. Accordingly, "there is no injury for [this] federal court to redress." *Id*. Therefore, because Plaintiffs have not established an injury-in-fact, causation, or redressability, the Districts respectfully request that the Court deny the Plaintiffs' Motion for Preliminary Injunction.

    **B.**    **Plaintiffs Will Not Suffer Irreparable Harm From the Absence of An Injunction.**

Plaintiffs will not suffer irreparable harm from the absence of an injunction. Plaintiffs argue that they are likely to suffer irreparable harm because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Doc. 9 at 37. However, for the same reasons that this case is not ripe and Plaintiffs lack standing, the Plaintiffs have not identified imminent irreparable harm. No injury to Plaintiffs has occurred, and no injury is imminent because of the prerequisite requirement of voluntary donations of funds to the District under the Act. Therefore, Plaintiffs cannot show that they would suffer irreparable harm if a preliminary injunction is not entered in this case. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996).

    **C.**    **The Public Interest and the Balance of the Potential Harms to the Parties Do Not Weigh in Favor of Either Side.**

The final factors, the public interest and the balance of the harms, do not tip the scales in favor of an injunction. As explained above, Plaintiffs face no irreparable harm. And the balance of potential harms to the parties and the public's interest carry less weight here because the Plaintiffs' claims are not ripe and the Plaintiffs lack Article III standing. For these reasons, the public interest and the balance of potential harms to the parties do not cut in favor of an injunction.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Defendants, Fayetteville School District No. 1, Springdale School District No. 50, Bentonville School District No. 6, and Siloam Springs School District No.

21 respectfully request that this Court deny Plaintiffs' Motion for Preliminary Injunction and grant Defendants all other relief to which they may be entitled.

                                         Respectfully submitted,

                                         Marshall S. Ney, Ark. Bar No. 91108
                                         Katherine C. Campbell, Ark. Bar No. 2013241
                                         Sarah P. Smith, Ark. Bar No. 2022189
                                         FRIDAY, ELDREDGE & CLARK, LLP
                                         3350 S. Pinnacle Hills Parkway, Suite 301
                                         Rogers, AR 72758
                                         Office: (479) 695-6040
                                         Facsimile: (501) 244-5389
                                         mney@fridayfirm.com
                                         kcampbell@fridayfirm.com
                                         ssmith@fridayfirm.com