# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| SAMANTHA STINSON and JONATHAN STINSON, on behalf of themselves and on behalf of their minor children, A.R.S. and A.W.S.; STEPHEN CALDWELL, on behalf of himself and on behalf of his minor child, W.C.; JOSEPH ARMENDARIZ, on behalf of himself and on behalf his minor children, M.A. and W.A.; TALARA TAYLOR and SHANE TAYLOR, on behalf of themselves and on behalf of their minor children, K.T. and M.T.; CAROL VELLA, on behalf of herself and on behalf of her minor children, E.M.V. and N.M.V.; DANIEL RIX, on behalf of himself and on behalf of his minor children, A.R., J.R., and W.R.; and LEAH BAILEY, on behalf of herself and on behalf her minor children, C.T. and D.T., <br><br> Plaintiffs, <br><br> v. <br><br> FAYETTEVILLE SCHOOL DISTRICT NO. 1; SPRINGDALE SCHOOL DISTRICT NO. 50; BENTONVILLE SCHOOL DISTRICT NO. 6; and SILOAM SPRINGS SCHOOL DISTRICT NO. 21, <br><br> Defendants. | CIVIL ACTION NO. 5:25-cv-05127-TLB |

## <u>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE STATE OF ARKANSAS'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY</u>

**Table of Contents**

**Page**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD......................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.     Dr. Green's Report Does Not Impermissibly Opine on Legal Issues and Is Relevant. ................................................................................................................... 3

II.    Dr. Green's Report is Reliable........................................................................................ 7

    A.    Dr. Green's amicus history further demonstrates his expertise and is not grounds for excluding his report. .............................................................. 8

    B.    Dr. Green's conclusions about the Ten Commandments are not in conflict with his own prior writings or Supreme Court or Eighth Circuit Precedents. ........................................................................................................... 8

    C.    Dr. Green is qualified to opine on the denominational nature of Act 573's mandated text, and his conclusions are well-supported....................................... 11

    D.    Dr. Green's testimony is not biased.................................................................. 13

CONCLUSION.................................................................................................................. 15

## Table of Authorities

**Page(s)**

**Cases**

*ACLU Neb. Found. v. City of Plattsmouth,*
419 F.3d 772 (8th Cir. 2005) (en banc) ..................................................... 9, 12, 13

*ACLU Neb. Found. v. City of Plattsmouth,*
186 F. Supp. 2d 1024 (D. Neb. 2002) ................................................................. 12

*Am. Legion v. Am. Humanist Ass'n,*
588 U.S. 19 (2019) ................................................................................................ 9

*Artis v. Santos,*
95 F.4th 518 (7th Cir. 2024) .............................................................................. 11

*Bonner v. ISP Technologies, Inc.,*
259 F.3d 924 (8th Cir. 2001) ............................................................................... 3

*Books v. City of Elkhart,*
235 F.3d 292 (7th Cir. 2000) ....................................................................... 12, 13

*Comm. for Pub. Educ. & Religious Liberty v. Nyquist,*
413 U.S. 756 (1973) .............................................................................................. 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993) .............................................................................................. 2

*Den norske Bank AS v. First Nat. Bank of Bos.,*
75 F.3d 49 (1st Cir. 1996) .................................................................................. 14

*Engel v. Vitale,*
370 U.S. 421 (1962) .............................................................................................. 4

*Everson v. Bd. of Educ.,*
330 U.S. 1 (1947) .................................................................................................. 4

*Friedman v. Bd. of County Comm'rs,*
781 F.2d 777 (10th Cir. 1985) ............................................................................. 5

*Glassroth v. Moore,*
No. 2:01-cv-01268 (M.D. Ala. Oct. 23, 2002) .................................................... 5

*In re Zurn Pex Plumbing Prods. Liab. Litig.,*
644 F.3d 604 (8th Cir. 2011) ............................................................................... 2

*Johnson v. Mead Johnson & Co.,*
754 F.3d 557 (8th Cir. 2014) ............................................................................... 2

*Kennedy v. Bremerton Sch. Dist.,*
597 U.S. 507 (2022) .............................................................................................. 4

*Kudabeck v. Kroger Co.,*
338 F.3d 856 (8th Cir. 2003) ............................................................................... 6

*Larson v. Valente*,
456 U.S.228 (1982) ................................................................................................ 4

*Loftis v. Walmart, Inc.*,
No. 5:23-CV-5228, 2025 WL 1561261 (W.D. Ark. June 2, 2025) ................................ 2, 3, 11

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013) ................................................................................... 6

*McCreary County v. ACLU of Kentucky*,
545 U.S. 844 (2005) ............................................................................................ 4, 8

*McGriff Ins. Servs. v. Madigan*,
5:22-CV-5080, 2022 WL 16709050 (W.D. Ark. Nov. 4, 2022) ....................................... 2

*Reynolds v. United States*,
98 U.S. 145 (1878) .............................................................................................. 4

*Roake v. Brumley*,
No. 24-30706, 2025 WL 1719978 (5th Cir. June 20, 2025) ........................................ 1, 4

*Roake v. Brumley*,
756 F.Supp. 3d 93 (M.D. La. 2024) ........................................................................ 11

*Roake v. Brumley*,
756 F.Supp. 3d 219 (M.D. La. 2024) ............................................................... 1, 5, 10, 14, 15

*Robinson v. GEICO Gen. Ins. Co.*,
447 F.3d 1096 (8th Cir. 2006) ............................................................................... 3

*Sch. Dist. of Abington Township v. Schempp*,
374 U.S. 203 (1963) ............................................................................................ 4

*Shurtleff v. City of Boston*,
596 U.S. 243 (2022) ............................................................................................ 5

*Sphere Drake Ins. v. Trisko*,
226 F.3d 951 (8th Cir. 2000) ................................................................................ 6

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
580 U.S. 405 (2017) ............................................................................................ 8

*State v. Freedom From Religion Found., Inc.*,
898 P.2d 1013 (Colo. 1995) .................................................................................. 13

*Stone v. Graham*,
449 U.S. 39 (1980) .............................................................................................. 1

*Trunk v. City of San Diego*,
629 F.3d 1099 (9th Cir. 2011) ............................................................................... 5

*United States v. Ladue*,
561 F.3d 855 (8th Cir. 2009) ................................................................................ 5

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) ............................................................................................ 2

*Van Orden v. Perry*,
    545 U.S. 677 (2005) .................................................................................... 9, 12, 13

## **Secondary Sources**

4 Am. Jur. 2d Amicus Curiae § 1 ....................................................................... 8

About UVA Press, https://www.upress.virginia.edu/about/ (last visited Jul. 15, 2025) .............. 14

Fed. R. Evid. 401 ............................................................................................... 5

Fed. R. Evid. 702 ............................................................................................... 2

Oxford Univ. Press, https://www.ox.ac.uk/about/organisation/oxford-university-press
    (last visited Jul. 15, 2025) ......................................................................... 13

Steven K. Green, *The Bible, the School, and the Constitution: The Clash that Shaped
    Modern Church-State Doctrine*, 14 J.L. & Religion 525 (1999-2000) ................................. 11

Steven K. Green, *The Fount of Everything Just and Right? The Ten Commandments As
    A Source of American Law* (Oxford Univ. Press, 2012) .................................................... 10, 11

The Grand Collaboration: Thomas Jefferson, James Madison, and the Invention of
    American Religious Freedom, University of Virginia Press, Reviews,
    https://www.upress.virginia.edu/title/10018/ (last visited Jul. 15, 2025) ................................ 7

## <u>INTRODUCTION</u>

Steven K. Green, J.D., Ph.D. is one the nation's foremost historians studying the intersection of law, religion, and history. He has specifically researched and written about the Ten Commandments in that context, and he has documented the role that religion has played in public schools. As Plaintiffs have explained in their briefing,[1] the outcome of this case is controlled by the Supreme Court's binding decision in *Stone v. Graham*, 449 U.S. 39 (1980). The Court need look no further in its analysis. But should the Court go beyond *Stone* and additionally analyze claims or arguments under other First Amendment jurisprudence, few scholars are better-positioned or more qualified than Dr. Green to elucidate the pertinent historical facts and context that will help inform the Court's legal inquiry.[2]

Indeed, in a case challenging a similar Louisiana statute, a federal district court rejected the defendants' effort to exclude Dr. Green's report and testimony, finding him to be "exceptionally well-credentialed and knowledgeable on the issues under consideration and . . . credible, clear, and candid in his answers during both examination and cross-examination." *Roake v. Brumley*, 756 F. Supp. 3d 219, 233 (M.D. La. 2024), *aff'd*, No. 24-30706, 2025 WL 1719978 (5th Cir. June 20, 2025). As in *Roake*, this Court should deny the *Daubert* motion and "accept[] [Dr.] Green as an expert in the fields tendered: the history of the United States Constitution and the First Amendment with respect to religious matters, the history of religion in U.S. public schools, and denominational variations in the text of the Ten Commandments." *Id.* at 238.

---

[1] *See* Mem. in Support of Plfs' Mot. for Preliminary Injunction (hereinafter "Plfs. Br."), ECF No. 9 at 1, 8-10; Plfs' Combined Mem. of Law in Opp. to Defs' Mot. to Dismiss & the State of Arkansas's Mot. to Dismiss & Reply in Support of Plfs.' Mot. for Preliminary Injunction (hereinafter, "Plfs. Opp.), ECF No. 58, 2, 27-33.

[2] In accordance with the Affidavits of Service, ECF Nos. 15-18, Plaintiffs served Dr. Green's report on Defendants on June 13, 2025. Neither Defendants nor the State served on Plaintiffs any opening expert report or rebuttal report.

## **LEGAL STANDARD**

Under the Federal Rules of Evidence, to submit expert testimony, a person must be qualified by their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The admission of expert testimony is governed by the criteria set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and its progeny, which "[t]he Eighth Circuit has 'boiled down' . . . into a three-part test":

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Loftis v. Walmart, Inc*., No. 5:23-CV-5228, 2025 WL 1561261, at *3 (W.D. Ark. June 2, 2025) (quoting *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014)).

That standard is further relaxed here because Dr. Green's report and testimony are submitted in support of Plaintiffs' preliminary-injunction motion and in connection with a "bench" proceeding. *See, e.g.*, *McGriff Ins. Servs. v. Madigan*, No. 5:22-CV-5080, 2022 WL 16709050, *2 (W.D. Ark. Nov. 4, 2022) ("In the context of a preliminary injunction hearing, . . . many courts recognize their discretion to relax the Rules of Evidence to some degree and consider evidence that would otherwise be inadmissible at trial, including hearsay evidence. This is because 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than a trial on the merits.'" (quoting *Univ. of Tex. v. Caminisch*, 451 U.S. 390, 395 (1981)); *see also, e.g.*, *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) (noting "less stringent application of *Daubert* in bench trials" because "[t]he "usual concerns of the *Daubert* rule—keeping unreliable expert testimony from the jury—are not

present in such a setting" (cleaned up)). As discussed below, Dr. Green's testimony easily meets the threshold for admissibility under this standard.

## **ARGUMENT**

Contrary to the State's arguments, Dr. Green's report is both reliable and relevant. The State's objections to Dr. Green's report have no merit, but even if the State's concerns were legitimate, they would merely affect the weight this Court should give the testimony in its analysis. *See, e.g.*, *Loftis*, 2025 WL 1561261, at *4 ("'Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.'" (quoting *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001))); *accord Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.").

## I.    **Dr. Green's Report Does Not Impermissibly Opine on Legal Issues and Is Relevant.**

The State mischaracterizes Dr. Green's report as improperly opining on legal issues, namely the "the meaning of the Constitution."[3] The report does no such thing. It merely elucidates the origins of the Religion Clauses of the First Amendment and concludes that they were "rooted in the Founders' profound concerns for protecting the conscience of individuals and religious communities against all forms of religious coercion; avoiding official denominational discrimination and preferences, including the official promotion of religious doctrine; and preventing the religious divisiveness that flows from government favoritism of some religions over others or non-religion."[4] The State may not like what this historical information ultimately

---

[3] Br. in Support of the State of Arkansas's Mot. to Exclude Expert Report & Testimony (hereinafter "Ark. Mot."), ECF 55, 2-3.

[4] Plfs. Br., Ex. 12 (Expert Report of Steven K. Green, J.D., Ph.D. (hereinafter, "Green Rep."), p. 6 & ¶¶ 18-26. After Dr. Green's report was filed, a clerical error was discovered as to several internal cross-cites: In paragraph 48, the supra cross-cite to ¶¶ 38-39 should be to ¶¶ 40-41, and the infra cross-cite to ¶¶ 50-56, should be to ¶¶ 52-58; in paragraph 49, the supra cross-cite to ¶ 40 should be to   ¶ 42; and in paragraph 51, the supra cross-cite to ¶¶ 46-48 should be to ¶¶ 40-50.

portends for the meaning of the Religion Clauses today, or for Act 573's conflict with originalist principles, but that is no reason to exclude Dr. Green's report and testimony, any more than a court should exclude expert testimony on a speeding car because the underlying facts point to a legal conclusion of reckless driving.

The State also complains that Dr. Green's Report focuses too much on James Madison and Thomas Jefferson and "neglects to mention that the First Amendment did not originally apply to the States[.]" Ark. Mot. 3-4. But Plaintiffs' evidentiary focus on the Founders' views pertaining to religion and government is a direct result of the Supreme Court's guidance in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), that Courts should look to "the understanding of the Founding Fathers" in interpreting the Establishment Clause. Plfs. Opp. 39 (quoting *Roake v. Brumley*, No. 24-30706, 2025 WL 1719978, at * 17 (5th Cir. June 20, 2025), quoting *Kennedy*, 597 U.S. at 535).

When it comes to the First Amendment, as Dr. Green's report explains, no one was more influential than Madison and Jefferson. Green Rep. ¶¶ 21-26. Thus, the report's focus on their views is understandable and appropriate, especially considering that case after case issued by the Supreme Court has done the same when construing the Establishment Clause.[5] And those views are directly relevant to any historical inquiry here despite the fact that the Establishment Clause was not incorporated to the States at the Founding. The Supreme Court has never suggested that the historical analysis is so narrow as to depend on whether the challenged conduct is federal, state, or local in nature, and Defendants' demand that Dr. Green's report should have distinguished between the Founders' views of federal and state or local actions cannot be reconciled with a long

---

[5] *See, e.g.*, *Reynolds v. United States*, 98 U.S. 145, 162–63 (1878); *Sch. Dist. of Abington Township v. Schempp*, 374 U.S. 203, 214 (1963); *Everson v. Bd. of Educ.*, 330 U.S. 1, 11–13 (1947); *Engel v. Vitale*, 370 U.S. 421, 425, 436 (1962); *Larson v. Valente*, 456 U.S.228, 245 (1982); *Comm. for Pub. Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 770 n.28 (1973); *McCreary Cnty. v. ACLU of Kentucky*, 545 U.S. 844, 878 (2005).

line of First Amendment case law making clear that the Establishment Clause applies as equally to public schools as it does to the federal government. Nor has the Supreme Court ever held that the *Kennedy* inquiry is somehow limited to the "six hallmarks" of establishment set forth in Justice Gorsuch's concurring opinion in *Shurtleff v. City of Boston*, 596 U.S. 243 (2022). *Compare* Ark. Mot. 8 *with* Plfs. Opp. 38-40.

Accordingly, Dr. Green's report is plainly relevant to Plaintiffs' claims. Expert evidence is relevant and properly admitted if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Ladue*, 561 F.3d 855, 857 (8th Cir. 2009) (quoting Fed. R. Evid. 401). And as the district court in *Roake* explained, "courts have routinely admitted testimony by historians in litigation over constitutional issues, including Establishment Clause challenges, recognizing that the elucidation of complex social and historical issues by experts in the social sciences valuably informs the legal analysis." *Roake v. Brumley*, 756 F. Supp. 3d at 235.[6]

Like in *Roake*, Dr. Green's Report elucidates historical facts that will help determine the line "between permissible and impermissible" and "the understanding of the Founding Fathers."[7] For example, the report discusses key historical events and writings that shed light on the purposes and core principles animating the Founders' understanding of the First Amendment. Green Rep. ¶¶ 18–26. It clarifies the role played by the Ten Commandments in foundational documents and analyzes and synthesizes these voluminous historical texts in a helpful manner. *Id.* ¶¶ 27–37. And

---

[6] *See, e.g.*, *Trunk v. City of San Diego*, 629 F.3d 1099, 1119 (9th Cir. 2011) (noting expert testimony by historian in Establishment Clause case); *Friedman v. Bd. of County Comm'rs*, 781 F.2d 777, 779 (10th Cir. 1985) (discussing testimony by parties' expert historians in Establishment Clause challenge); *Glassroth v. Moore*, No. 2:01-cv-01268 (M.D. Ala. Oct. 23, 2002), ECF No. 131 (admitting expert report in Establishment Clause challenge to Ten Commandments monument displayed in Alabama Supreme Court rotunda).

[7] Dr. Green's opinions are also relevant to Plaintiffs' claims that the Act adopts and prescribes a religiously preferential version of the Ten Commandments, Green Rep. ¶¶ 52–58, and that displays posted in accordance with the Act will result in coercion of the minor-child Plaintiffs, *id.* ¶¶ 18–26.

the report provides background knowledge and context regarding the historical record relating to the use of the Ten Commandments in public education and the specific practice at issue here— displays of the Ten Commandments in public schools. *Id.* ¶¶ 38–51.

Thus, the report provides significant assistance to this Court. *See, e.g.*, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135–36 (2d Cir. 2013) (holding that a historian's expert testimony is admissible where it "help[s] to identify, gauge the reliability of, and interpret evidence that would otherwise elude, mislead, or remain opaque to a layperson[,] . . . synthesize[s] dense or voluminous historical texts[,] . . . [or] offer[s] background knowledge or context that illuminates or places in perspective past events."(internal citations omitted)); *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003) ("Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact.").

The State claims that Dr. Green's "characterization of the historical record" is "blinkered," Ark. Mot. 4, but offers no historical evidence or expert testimony of its own that calls into question any specific historical conclusion. The State's baseless denigration of Dr. Green's report notwithstanding, the issues raised by the State would, at most, affect the weight this Court should give his opinions and conclusions in its analysis—not justify their wholesale exclusion. *See, e.g.*, *Sphere Drake Ins. v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000) ("Attacks on the foundation for an expert's opinion, as well as the expert's conclusions, go to the weight rather than the admissibility of the expert's testimony.").

## II.    <u>Dr. Green's Report is Reliable.</u>

The State proffers four reasons why Dr. Green's report is purportedly unreliable. First, misunderstanding the nature of the amicus process and Supreme Court rulings, the State argues that Dr. Green's opinions cannot be trusted because the Supreme Court has ruled against the litigant he supported in various amicus briefs. Second, the State contends that Dr. Green's opinions are inconsistent with Supreme Court and Eighth Circuit precedent and his own writings. Third, the State asserts that Dr. Green is not qualified to observe differences between denominational versions of the Ten Commandments. And fourth, the State suggests that Dr. Green is biased due to his employment more than two decades ago. None of these claims hold merit, but even if they did, like the claims discussed above, they would go only to weight.

In fact, Dr. Green is eminently qualified to offer the opinions and conclusions in his report. He is one of the nation's foremost historians studying "the intersection of law, religion, and history," as well as "the role of religion in the development and operation of public schooling in the United States." *See* Green Rep. ¶¶ 2–4.[8] He has authored "seven books and more than sixty scholarly articles and book chapters on the subject area." *Id.* ¶ 2 & Ex. A. And his numerous other educational and professional positions, associations, and work further demonstrate both the breadth and depth of his study and expertise. *See id.* ¶ 1 & Ex. A. As an award-winning, tenured professor with a lengthy list of publications relevant to the questions at issue in this case, his testimony should be admitted.

---

[8] Jack N. Rakove, winner of the Pulitzer Prize in history and Coe Professor of History and American Studies and Professor of Political Science, Emeritus at Stanford University, has stated in response to Dr. Green's recently released book on Thomas Jefferson and James Madison: "Green is one of the leading historians of the development of the ideas, doctrines, and practices of American religious freedom. I cannot think of another scholar who has contributed as much to the subject[.]" The Grand Collaboration: Thomas Jefferson, James Madison, and the Invention of American Religious Freedom, University of Virginia Press, Reviews, https://www.upress.virginia.edu/title/10018/ (last visited Jul. 15, 2025).

**A.    Dr. Green's amicus history further demonstrates his expertise and is not grounds for excluding his report.**

As the State notes, Ark. Mot. 4–5, in addition to his extensive research and publishing record in this area, Dr. Green also has penned or collaborated on more than twenty-five Supreme Court amicus briefs in his capacity as a historian and legal scholar—the most relevant to this case being his authorship of an amicus brief in *McCreary County v. ACLU of Kentucky*, 545 U.S. 844 (2005). Green Rep. ¶ 3. His involvement in these matters as amicus is yet another indicator of his deep knowledge in this area and the respect his work has commanded from his peers, notwithstanding the State's effort to mischaracterize his opinions as somehow unreliable because, purportedly, "the Supreme Court ruled *against* his understanding of the First Amendment and its related history." Ark. Mot. 5 (emphasis in original).

Putting aside that the *McCreary* Court ruled in favor of the respondents, whom Dr. Green's amicus brief supported, the State completely misapprehends the role played by amici. Amici are not parties to a case. *See generally* 4 Am. Jur. 2d Amicus Curiae § 1. A variety of factors may affect the consideration and weight accorded by the Supreme Court to particular amicus briefs. *See, e.g.*, *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 408 (2017) (rejecting amicus argument because "[w]e generally do not entertain arguments that were not raised below and that are not advanced in this Court by any party"). The Court's rulings in these cases, Ark. Mot. 4–5, thus say nothing about the reliability of Dr. Green's historical opinions, and they certainly are not a basis for excluding Dr. Green's report here.

**B.    Dr. Green's conclusions about the Ten Commandments are not in conflict with his own prior writings or Supreme Court or Eighth Circuit Precedents.**

The State further asserts that Dr. Green's testimony is "both unreliable and irrelevant" because his "conclusions [about the Ten Commandments' place in our legal system] are

8

contradicted by Supreme Court and Eighth Circuit precedent[.]" *Id.* at 5–6. For instance, the State cites, *id.* at 6, to the Court's note in *American Legion v. American Humanist Association*, 588 U.S. 19, 53 (2019), that the Ten Commandments "have historical significance as one of the foundations of our legal system, and for largely that reason, they are depicted in the marble frieze in our courtroom and in other prominent public buildings in our Nation's capital." But Dr. Green's analysis and recounting of history on this point have substantial probative value, setting forth persuasive evidence that "there is no historical basis for *singling out* the Ten Commandments as seminal in the foundation of American law and government." Green Rep. ¶ 37 (emphasis added). Thus, even if this Court credits the Supreme Court's assertion in *American Legion* that the Commandments "have historical significance as *one* of the foundations of our legal system[,]" 558 U.S. at 53 (emphasis added),[9] the thrust of Dr. Green's point still stands.

Moreover, notwithstanding the Eighth Circuit's observation, Ark. Mot. 6, that Ten Commandments displays can be "a passive acknowledgment of the roles of God and religion in our Nation's history," and that "representations of the Ten Commandments on government property are replete throughout our country," *ACLU Neb. Found. v. City of Plattsmouth*, 419 F.3d 772, 777–78 (8th Cir. 2005) (en banc), Dr. Green's report does not concern the Ten Commandments' historic placement in national public buildings or on government property

---

[9] The Supreme Court's remark in *American Legion* was not a holding. At best, it is dicta and was not based on any evidentiary record because *American Legion* involved a challenge to the government's display of a nearly century-old Latin Cross war memorial, not the Ten Commandments. *Am. Legion*, 588 U.S. at 53. *American Legion* cites to the plurality opinion in *Van Orden*, where the Court notes the Commandments' role in America's "heritage," but the plurality does not assert that the Ten Commandments are a foundation of the U.S. legal system. *See, e.g.*, *Van Orden v. Perry*, 545 U.S. 677, 712 n.9 (2005) (Stevens, J., dissenting) ("Though this Court has subscribed to the view that the Ten Commandments influenced the development of Western legal thought, it has not officially endorsed the far more specific claim that the Ten Commandments played a significant role in the development of our Nation's foundational documents . . . Although it is perhaps an overstatement to characterize this latter proposition as 'idiotic' as one Member of the *plurality* has done, at the very least the question is a matter of intense scholarly debate.") (internal citation omitted).

generally. It focuses on the lack of historic tradition and widespread display of the Ten Commandments in *public-school classrooms*, which is the heart of Plaintiffs' challenge to Act 573.

Dr. Green's conclusion that "there is no historical basis for singling out the Ten Commandments as seminal in the formation of American law and government," Green Rep. ¶ 37, tracks with his conclusions in his prior writings. The State's attempt to manufacture a supposed contradiction is based on cherry-picked quotations of his work. *See* Ark. Mot. 6–7. Specifically, in quoting Dr. Green's article on the Ten Commandments, the State omits key context that follows, which specifically refutes any claims of "a much closer relationship between the Ten Commandments and American law." Steven K. Green, *The Fount of Everything Just and Right? The Ten Commandments as a Source of American Law*, 14 J.L. & Rel. 525, 526 (1999-2000). Noting that the Commandments' role "as a central source of law is generally assumed," Dr. Green explains that "[t]he historical record fails to support claims of a direct relationship." *Id.* at 529, 558. Rather, "[a]bsent the failed experiment in seventeenth century Massachusetts and the other Puritan colonies, American law has generally been viewed as having a secular origin and function." *Id.* at 558. In sum, he writes, "the most that could be said about the relationship of the Ten Commandments to the law is that the former has influenced legal notions of right and wrong . . . [b]ut to insist on a closer relationship or to hold the Ten Commandments up as having a special place in the development of American law lacks historical support." *Id.*

As the district court held in *Roake*, Dr. Green's "view on the role of the Ten Commandments in American history is more nuanced than that suggested by [the State]. But most importantly, . . . [those] objections go the merits of his testimony and are therefore a matter for cross-examination at the hearing rather than exclusion via a *Dauber*t motion." 756 F. Supp. 3d at 237.

C.   **Dr. Green is qualified to opine on the denominational nature of Act 573's mandated text, and his conclusions are well-supported.**

Instead of attacking Dr. Green's qualifications as a historian, the State claims that his opinions, as to the final section of his report, Green Rep. ¶¶ 52-58, are unreliable because he is not a theologian. *See* Ark. Mot. 5–8. However, Dr. Green's conclusions do not require him to be a theologian or expert of theology. Rather, his analysis of Act 573, including his opinion that the text of the Ten Commandments used in the Act is sect-specific, is based on his extensive study, research, experience, and overall expertise in law, religion, and history. Indeed, with the violent discord and other conflicts in early public schools between Protestants and Catholics, Green Rep. ¶¶ 40-41, the tensions between different religious sects and their religious doctrine have been an important part of his research. *See id.* (citing Steven K. Green, *The Bible, the School, and the Constitution: The Clash that Shaped Modern Church-State Doctrine* (Oxford Univ. Press, 2012)). And the very article that the State cites in its motion also delves into how early religious leaders treated scripture, including the Ten Commandments, in connection with their understanding of the law. *See The Fount of Everything Just and Right?* 14 J.L. & Religion 525 at 531. Moreover, the secondary sources cited by Dr. Green in his report, Green Rep. ¶¶ 52-57, further support his conclusion that Act 573 mandates a Protestant version of the Ten Commandments.

As this Court has recognized, "an expert need not wear a lab coat nor cite peer-reviewed studies to reliably lend his expertise to the trier of fact—experience is an equally valuable teacher." *Loftis*, 2025 WL 1561261, at *6 (quoting *Artis v. Santos*, 95 F.4th 518, 526 (7th Cir. 2024)). Here, Dr. Green has his own peer-reviewed books and articles, *plus* a deep well of research, study, and experience to back up his conclusions. *See Roake v. Brumley*, 756 F. Supp. 3d 93, 210 n.22 ("The Court also notes that Green provided extensive testimony about the ways in which the Ten Commandments as adopted by H.B. 71 are Protestant and religiously exclusive. . . . Green

11

highlights how the King James version of the Decalogue, as used in *Van Orden* and H.B. 71, is inconsistent in various ways with the Jewish and Catholic versions . . . and much of this coincides with the testimony of the named Plaintiffs[.]" (internal citations omitted)).

Nevertheless, the State asserts that certain precedents contradict Dr. Green's conclusion that Act 573 mandates a Protestant version of the Ten Commandments. Ark. Mot. 7. Not so. The cases cited by the State speak to the *process* purportedly used in creating the text displayed on the *Van Orden* monument and others. *See, e.g.*, *Van Orden*, 545 U.S. at 701 (Breyer, J., concurring) ("The Eagles' consultation with a committee composed of members of several faiths *in order to find* a nonsectarian text underscores the group's ethics-based motives." (emphasis added)); *City of Plattsmouth*, 419 F.3d at 773 n.2 ("The monument lists eleven commands *ostensibly* to serve as an amalgamation of the Jewish, Protestant, and Catholic versions of the Ten Commandments." (emphasis added)); *ACLU Nebraska Found. v. City of Plattsmouth*, 186 F. Supp. 2d 1024, 1032 n.9 (D. Neb. 2002) ("The Eagles *attempted to choose* nonsectarian language for the Ten Commandments that would be acceptable to Protestants, Catholics, and Jews[.]" (emphasis added)); *see also Books v. City of Elkhart*, 235 F.3d 292, 294 (7th Cir. 2000) ("In response to these concerns, representatives of Judaism, Protestantism, and Catholicism developed *what the individuals involved believed to be* a nonsectarian version of the Ten Commandments." (emphasis added)).

But even assuming that those who originally crafted the text of the *Van Orden* and similar monuments sought, in good faith, to produce a "compromise" version of the Ten Commandments that would be "nonsectarian" and acceptable to Catholics, Jews, and Protestants, Dr. Green's report reveals the outcome of that process: a scriptural text that is distinctly Protestant. His conclusions

do not, therefore, conflict with case law, and they are well-supported by Dr. Green's own research, on-point secondary sources, and the declarations of Plaintiffs here and in cases like *Roake*.[10]

### D.    Dr. Green's testimony is not biased.

Finally, the State argues that Dr. Green's opinions are unreliable because his employment—more than two decades ago—with Americans United for Separation of Church State, whose attorneys are among those representing Plaintiffs in this case, indicates "potential bias." Ark. Mot. 8–9. The State does not, however, point to any evidence of actual bias in Dr. Green's report. Indeed, Dr. Green's opinions are based on over twenty years of academic and historical research, study, and writing—the results of which have been published by various renowned academic journals and publishers, including the Oxford University Press and the University of Virginia Press, which presumably seek to avoid placing their stamp of approval on one-sided or misrepresentative work.[11] And much of this work, including his books and his most relevant articles, has been

---

[10] Though futile, the efforts to render the displays "nonsectarian" in the cases cited by the State depended, in large part, on the *iconography that accompanied the selected text* on each monument—none of which is included in Act 573. *See e.g.*, *Van Orden*, 545 U.S. at 681 (plurality opinion) (noting that challenged monument included "[a]n eagle grasping the American flag, an eye inside of a pyramid, and two small tablets with what appears to be an ancient script are carved above the text of the Ten Commandments" and that "[b]elow the text are two Stars of David and the superimposed Greek letters Chi and Rho, which represent Christ"); *City of Plattsmouth*, 419 at 773 ("Above the text of the Commandments appear two small tablets surrounded by a floral design; an eye within a pyramid—an all-seeing eye similar to that appearing on the back of a dollar bill; and an eagle clutching the American flag. Below the text are two Stars of David; the intertwined Greek letters 'chi' and 'rho'; and a scroll reading, 'PRESENTED TO THE CITY OF PLATTSMOUTH, NEBRASKA BY FRATERNAL ORDER OF EAGLES PLATTSMOUTH AERIE NO. 365 1965.'"); *cf. Books*, 235 F.3d at 296 ("At the top of the monument, there are two small tablets that contain ancient Hebrew script. Surrounding both of these tablets is a floral design, and between the two tablets is an eye within a pyramid—an all-seeing eye. Immediately below the all-seeing eye is an American Eagle grasping the American flag. Below the text on the monument are two small Stars of David. In the center of the two stars is a similarly sized symbol representing Christ: two Greek letters, Chi and Rho, superimposed upon each other. At the base of the monument is a small scroll, which reads as follows: PRESENTED TO THE CITY OF ELKHART, IND. BY ELKHART AERIE NO. 395 FRATERNAL ORDER OF EAGLES MAY, 1958."); *State v. Freedom From Religion Found., Inc.*, 898 P.2d 1013, 1023–24 (Colo. 1995) ("The monument at issue here does not reproduce exactly the Ten Commandments as accepted by any particular sect. The text includes symbols of at least two significant religions, Judaism and Christianity, whose teachings are in substantial conflict with each other. We find that the juxtaposition of the Christian Chi and Rho with the Jewish Star of David reflects an acknowledgement of reconciliation and diversity more than any sentiment of intolerance. Between the two tablets is an 'all-seeing eye' which has both secular and nonsecular meanings. . . . The monument also has patriotic symbols in the form of an eagle and the flag.").

[11] *See* Oxford Univ. Press, https://www.ox.ac.uk/about/organisation/oxford-university-press (last visited Jul. 15, 2025) ("The main criteria when evaluating a new title for publication are its quality and whether it supports the aims

subjected to the rigorous peer-review process. Green Rep. ¶¶ 5–6. Moreover, courts have not only permitted *former employees of a party* to testify as experts, but they have permitted *current employees of a party* to do so as well. *See, e.g.*, *Den norske Bank AS v. First Nat. Bank of Bos.*, 75 F.3d 49, 58 (1st Cir. 1996) (admitting expert affidavits of plaintiff company's current and former vice presidents).

In any event, as with the State's other objections, any allegation of "potential" bias would go, at most, to the weight of the evidence; it does not warrant the complete exclusion of Dr. Green's report and testimony from this case. *See Roake,* 756 F. Supp. 3d 219, 237–38 ("The Court agrees with Plaintiffs that AG Defendants have failed to show bias merely because of Green's employment with AUSCS some twenty years ago, and this is especially true in light of Green's extensive scholarship in the area at issue. Despite the opportunity to cross-examine Green on this issue, AG Defendants have offered no additional evidence of supposed bias. Furthermore, and more importantly for purposes of this Motion, bias, even if shown, is typically not a ground for exclusion but a matter which goes to weight of the opinions offered."); *see also Den norske Bank AS*, 75 F.3d at 58 ("[W]e are not persuaded that First National has demonstrated that the expert qualifications of these affiants are undermined by their present and former association with Den norske so as to render their testimony *inadmissible*. Of course, such matters may bear heavily on witness credibility, bias, and the weight of the evidence. But these are matters for the factfinder.").

---

of furthering education and disseminating knowledge."); About UVA Press, https://www.upress.virginia.edu/about/ (last visited Jul. 15, 2025) (noting its mission to publish scholarship "that contributes to the progress of research and learning" and is "aimed at bringing the findings of a discipline to the well-educated reading public").

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that this Court deny the State's motion to exclude Dr. Green's testimony. As in *Roake*, if the State or Defendants "contend there is a competing view of the relevant history either as to the historical facts or the proper characterization of those facts as given by [Dr.] Green, [the State and Defendants] had a chance to [offer their own report] and call their own expert to contradict and challenge Green. [They] chose not to do so." *Roake*, 756 F. Supp. 3d at 235.

Date: July 16, 2025

Respectfully submitted,

By: <u>John C. Williams</u>
ARKANSAS CIVIL LIBERTIES UNION
FOUNDATION, INC.
John C. Williams (ABN 2013233)
Shelby H. Shroff (ABN 2019234)
904 W. 2nd St.
Little Rock, AR 72201
(501) 374-2842
*john@acluarkansas.org*
*shelby@acluarkansas.org*

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Daniel Mach*
Heather L. Weaver*
915 15th Street, NW, Suite 600
Washington, DC 20005
(202) 675-2330
*dmach@aclu.org*
*hweaver@aclu.org*

AMERICANS UNITED FOR
SEPARATION OF CHURCH & STATE
Alex J. Luchenitser*
Amy Tai*
Jess Zalph*
1310 L Street NW, Suite 200
Washington, DC 20005

15

(202) 466-7306
*luchenitser@au.org*
*tai@au.org*
*zalph@au.org*

FREEDOM FROM RELIGION
FOUNDATION
Patrick C. Elliott*
Samuel T. Grover*
Nancy A. Noet*
PO Box 750
Madison, WI 53701
(608) 256-8900
*patrick@ffrf.org*
*sgrover@ffrf.org*
*noetn@ffrf.org*

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood
Janet A. Gochman*
Noah Gimbel*
Jordan T. Krieger*
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
*jyoungwood@stblaw.com*
*jgochman@stblaw.com*
*noah.gimbel@stblaw.com*
*jordan.krieger@stblaw.com*

*Counsel for Plaintiffs*

*   Pro Hac Vice*

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 16, 2025, I filed the foregoing on the CM/ECF system, which

completed service upon counsel for Defendants and the State of Arkansas.


By: <u>John C. Williams</u>
John C. Williams