UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

SAMANTHA STINSON and JONATHAN STINSON, on behalf of themselves and on behalf of their minor children, A.R.S. and A.W.S., et al.,

    Plaintiffs,

    v.

FAYETTEVILLE SCHOOL DISTRICT NO. 1, et al.,

    Defendants,

and

STATE OF ARKANSAS, *ex rel.* TIM GRIFFIN, ATTORNEY GENERAL,

    Intervenor.

CIVIL ACTION NO. 5:25-cv-05127-TLB

**JOINT RULE 26(f) REPORT**

On October 16, 2025, counsel for Plaintiffs, counsel for Defendants,[1] and counsel for Intervenor met and conferred as required by Fed. R. Civ P. 26(f).[2] They submit the following report from the conference.

1. **Plaintiffs' Statement of the Case.**

Arkansas Act 573 of 2025 requires public schools to "prominently display" a durable poster or framed copy of a state-approved, Protestant version of the Ten Commandments in every classroom and library. Each poster or framed copy must be at least sixteen by twenty inches in size, hung in a "conspicuous place," and include "the text of the Ten Commandments in a size and typeface that is legible to a person with average vision from anywhere in the room." The displays will be permanent and year-round, and placed in every classroom, regardless of the subject matter taught. Under the Act, the required displays will be donated to school districts or purchased by school districts using donated funds. The Act also authorizes schools to use public funds to replace any noncompliant display in their possession with a compliant display.

Suing on behalf of themselves and their minor children, a group of Arkansas parents seek a declaratory judgment that Act 573 is unconstitutional under the Establishment Clause and Free Exercise Clause of the First Amendment and a permanent injunction preventing the School District Defendants from implementing the law. *See generally* Second Supp. Compl., ECF No. 131. After the Act was signed into law, several expansive campaigns were launched by various private individuals and religious organizations to raise funds and provide donated posters to all school

---

[1] On October 14, 2025, Plaintiffs filed a Motion for Leave to Supplement the Complaint, ECF No. 123, to add Lakeside School District No. 9 as a Defendant. That motion was pending at the time of the Rule 26(f) conference. Jay Bequette, counsel for both Conway School District No. 1 and Lakeside School District No. 9, confirmed that the responses in this report apply to Lakeside School District. No. 9. On October 23, 2025, the Court granted Plaintiffs' Motion for Leave to Supplement the Complaint. ECF No. 130.

[2] The Attorney General's office, on behalf of the State of Arkansas, filed a motion to intervene, ECF No. 39, which was granted on June 18, 2025. ECF No. 42.

districts in Arkansas, and Defendants Conway School District and Lakeside School District have hung posters in classrooms.

2. **Defendants' Statement of the Case.**

**Defendants' Statement:** Plaintiffs are the parents of students who attend public schools in the school districts named as Defendants in this case, and they have brought this lawsuit challenging the constitutionality of Arkansas Act 573 of 2025 (the "Act"). The Act requires Defendants to display all Ten Commandments posters they receive and to use donated funds to purchase such posters. The State of Arkansas, by and through its Attorney General, Tim Griffin, sought and was granted leave to intervene. Defendants and the State filed Motions to Dismiss the Complaint, arguing that Plaintiffs lack standing to bring their claims and that such claims are not yet ripe. The Court denied those Motions to Dismiss and entered a preliminary injunction enjoining the Defendants from complying with Act 573.

**Intervenor's Statement:** Arkansas Act 573 of 2025 provides for "a historical representation of the Ten Commandments" to be posted in public-school classrooms and libraries if funds are donated for that purpose or a display is donated. Ark. Code Ann. § 1-4-133(a)(1)(B)(i)–(ii). The text of the Ten Commandments in Act 573 is non-sectarian and nearly identical to the text approved for public display by the Supreme Court and the en banc Eighth Circuit in *Van Orden v. Perry*, 545 U.S. 677 (2005), and *ACLU Nebraska Foundation v. City of Plattsmouth*, 419 F.3d 772 (8th Cir. 2005) (en banc).

Plaintiffs seek a permanent injunction, alleging that Act 573 facially violates the Establishment Clause and Free Exercise Clause. Intervenor asserts that the original Plaintiffs lack standing for both of their claims. In any event, Plaintiffs are not entitled to relief as a matter of law. No court has held that a passive display of the Ten Commandments, which does not coerce or compel individuals to do anything, substantially interferes with free exercise rights. And such a

passive, non-sectarian display of the Ten Commandments, which are "one of the foundations of our legal system," *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 53 (2019), and have a role "in America's heritage," *Van Orden*, 545 U.S. at 689 (plurality), does not violate the Establishment Clause as it has none of the hallmarks of a religious establishment. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537–38 n.5 (2022). Intervenor maintains that Plaintiffs' claims, as alleged, fail as a matter of law under legally binding precedent, but the Court disagreed. To the extent that Plaintiffs' allegations do state a claim, there are factual disputes as to what the displays will look like in context and the alleged burden on Plaintiffs parents' right to direct the religious upbringing of their children and on the children's free exercise rights. As *Mahmoud v. Taylor* explains, free exercise claims of the type Plaintiffs bring "will always be fact-intensive." 145 S. Ct. 2332, 2353 (2025).

3. **Are there any Objections pursuant to Rule 26(a)(1)(C) to providing required Initial Disclosures?**

    No.

4. **Are there any Objections to the timing of Rule 26(a) Initial Disclosures?**

    The parties agree to produce Initial Disclosures by October 27, 2025.

5. **Agreed Document Productions.**

    None.

6. **Discovery**

    a. **How many months are reasonably necessary to complete discovery—as measured from the date of the Case Management Hearing?**

    Per the Amended Phase I Case Management Order, entered on August 29, 2025, discovery closes on December 29, 2025. *See* ECF No. 101.

    **Intervenor's Position:** Intervenor has raised his opposition to the Court's abbreviated discovery timeline that was entered *sua sponte* and detailed the Court's mistaken assumption that

3

little fact discovery is necessary. *See* ECF Nos. 114, 127. Because of the "fact-intensive" nature of free exercise claims, Intervenor believes 12 months of discovery are necessary from the time of Plaintiffs' last amended or supplemental complaint. There are currently 31 Plaintiffs, 6 Defendants, and experts will likely be used by both sides. Assuming one expert per side, a 12-month discovery window would still require an average of more than 2.5 depositions per month to depose every Plaintiff and expert. That does not include time to obtain written discovery before commencing depositions or any depositions of Defendants that Plaintiffs may wish to take. A 12-month discovery window is therefore more than reasonable. Intervenor is prejudiced by the current schedule. Not only will Intervenor be curtailed in the type of discovery that is possible in such a short window, but it also limits (as explained further below) who is able to serve as an expert for Intervenor and the scope of that expert's report given the time frame that the Court has imposed.

**Plaintiffs' Position:** Intervenor vastly overstates its need for extensive discovery in this case. Intervenor's demand to conduct 31 depositions, including of the minor-child Plaintiffs, is excessive and harassing, and Plaintiffs reserve their right to oppose any motion filed by Intervenors or Defendants to expand the number of depositions that are allowed under Federal Rule of Civil Procedure 30. Intervenor has previously stated that it seeks discovery regarding (1) Plaintiffs' "specific religious and practices beliefs," (2) the context of any challenged displays, and (3) the ages of the child-plaintiffs. ECF No. 127 at 5-6. As to Plaintiffs' religious beliefs and practices, Plaintiffs have already submitted sworn testimony regarding these matters. Any further information Intervenor may seek to extract from them would be limited. The Supreme Court has made clear that, in determining a plaintiff's religious beliefs and their sincerity for purposes of evaluating a free-exercise claim, "[t]he Court's narrow function . . . is to determine whether the plaintiffs' [asserted religious belief] reflects an honest conviction." *Burwell v. Hobby Lobby Stores,*

4

*Inc.*, 573 U.S. 682, 725 (2014) (cleaned up); *see also, e.g.*, *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 791 (5th Cir. 2012) (holding that "[s]incerity is generally presumed or easily established" and any inquiry "must be handled with a light touch, or judicial shyness").

Moreover, Plaintiffs contend that Act 573's strict and extensive minimum requirements for displays, operating together and independent of any other factor or consideration, are unconstitutional. Thus, the context of any particular displays is irrelevant. Even it were relevant, information about the context of the displays (as well as the ages of the minor children) is readily available from the School District Defendants. In light of these factors, the current deadline provides an adequate timeframe in which to conduct any necessary discovery.

> **b. Do the parties seek to alter (increase or decrease) the maximum number of written discovery requests allowed by the Rules? If so, please explain.**

No.

> **c. Do the parties seek to increase the maximum number of depositions allowed per side? If yes, please explain the necessity and state how many depositions per side are proposed.**

**Defendants' Position:** Defendants do not seek to increase the maximum number of depositions.

**Intervenor's Position:** Intervenor seeks to increase the maximum number of depositions allowed per side. As explained, there are currently 31 Plaintiffs and Plaintiffs are likely to offer the expert they used at the preliminary-injunction stage. Because free exercise claims are fact intensive, depositions will likely need to be taken of every Plaintiff. As to minor Plaintiffs, Intervenor is unaware of any minor Plaintiff's age and therefore must operate as if all minor Plaintiffs will need to be deposed.[3] Intervenor thus believes up to 32 depositions will need to be

---

[3] Plaintiffs claimed in a reply that Intervenor does not need to engage in discovery tailored to each Plaintiff because Intervenor had not yet served written discovery, ECF No. 129, at 2; however, as Intervenor explained in an earlier email to counsel, Intervenor was waiting to serve written discovery to see if the parties could agree on a

5

taken of Plaintiffs' side. Intervenor has the "right to depose each plaintiff regarding his or her claim and further inquire into those circumstances alleged or any other relevant information." *Crawford v. Newport News Indus. Corp.*, No. 4:14-CV-130, 2016 WL 11673839, at *2 (E.D. Va. Jan. 21, 2016). Written discovery does "not provide the same opportunity 'to probe and cross-examine the claimants on their claims, which a deposition affords them the leeway to do,'" especially considering answers to written interrogatories "are often drafted, edited and revised with the extensive participation of counsel." *Id.* (quoting *EEOC . DHL Exp. (USA), Inc.*, No. 10 C 6139, 2012 WL 5381219, at *2 (N.D. Ill. Oct. 31, 2012)).

**Plaintiffs' Position:** Plaintiffs do not believe that there is any need to increase the maximum number of depositions allowed per side. "[A] party seeking leave to take more depositions . . . than are contemplated by the Federal Rules or by the Court's Scheduling Order, must make a particularized showing of why the discovery is necessary." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, 187 F.R.D. 578, 586 (D. Minn. 1999). Unlike the case Intervenor cites, which involved "plaintiffs with varying claims and fact patterns," *Crawford v. Newport News Indus. Corp.*, No. 4:14-CV-130, 2016 WL 11673839, at *2 (E.D. Va. Jan. 21, 2016), the Act 573 displays burden each Plaintiff's rights "*in exactly the same way.*" Order, ECF No. 129 at 3. Namely, they "usurp the fundamental rights of the parent-Plaintiffs" and "pressure the child-Plaintiffs into religious observance, meditation on, veneration, and adoption of the State's favored religious scripture." Order, ECF No. 71 at 32.

In light of this fact and the limited nature of the inquiry into religious beliefs permitted under the Free Exercise Clause, Intervenor's demand to take 31 depositions in this case (in addition to a potential expert deposition) is unnecessary, excessive, and harassing, as Plaintiffs discuss

---

bifurcated discovery schedule given the free exercise claims will require far more discovery than the Establishment Clause claims. Intervenor served written discovery last week.

above. Plaintiffs assert that Defendants and Intervenor should be limited to ten total depositions, combined. Should Defendants and Intervenor file a motion, as required by Federal Rule of Civil Procedure 30, for leave to exceed that number, Plaintiffs will provide further analysis and argument in opposition to the motion. Plaintiffs further oppose any depositions of the minor children in this case. Plaintiffs reserve the right to oppose any effort to depose the minor children by filing for a protective order or seeking other relief pursuant to Federal Rule of Civil Procedure 26(c) or on other grounds.

> d. **Please characterize the scope and extent of electronic discovery contemplated by the parties as follows: (i) none; (ii) fairly simple and routine; or (iii) complex. If your answer is "Complex," then please complete and attach Schedule A.**

Fairly simple and routine.

> e. **Do you anticipate the use of Expert Witnesses at trial? If so, state proposed dates by which the parties will be in a position to provide initial and rebuttal expert disclosures pursuant Rule 26(a)(2).**

Yes. Initial expert disclosures are due on October 27, 2025, and rebuttal expert disclosures are due on November 28, 2025. *See* Amended Phase I Case Management Order, ECF No. 101.

**Intervenor's Position:** Intervenor also objects to the Court's abbreviated expert-disclosure deadlines. The State has been prejudiced and is being prejudiced. Because of the shortened timeline (which has fallen in the middle of an academic semester), some potential experts were unable to provide a thorough, thoughtful report and therefore declined. Although Intervenor was able to engage an expert with the relevant knowledge and expertise who had familiarity with the case to enable him to put a report together, the report could have been more comprehensive if the discovery schedule in this case were not abbreviated. Intervenor believes 90 days from the close of a standard discovery timeline would be sufficient for initial disclosures, likely putting the deadline sometime in late July or early August 2026 if Plaintiffs leave to file a supplemental complaint is granted.

Intervenor believes disclosure of rebuttal experts would be appropriate 30 days after initial expert disclosures.

**Plaintiffs' Position:** On June 12, 2025, Plaintiffs filed the Complaint in this case and a motion for preliminary injunction, attaching the expert report of Dr. Steven Green. Intervenors intervened on June 18, 2025. Intervenors have had over four months to locate an expert witness. The expert timeline is reasonable.

f. **Do the parties presently contemplate the need for a protective order prior to the exchange of documents or information?**

☐ No.
☐ Yes. The parties stipulate to entry of the Court's standard protective order.
☐ Yes. The parties stipulate to entry of a modified version of the Court's standard protective order.

The parties agree that a protective order may be needed to protect the confidentiality of student records if such records are within the scope of discovery under Fed. R. Civ. P. 26(b). The parties will confer about the necessity for and form of any protective order and will seek prompt relief from the Court under Fed. R. Civ. P. 26(c) if needed.

**Plaintiffs' Position:** Plaintiffs oppose any depositions of the minor children in this case and reserve the right to seek a protective order to prevent such depositions. Furthermore, once any Plaintiffs to be deposed are identified, Plaintiffs may seek a protective order to maintain the confidentiality of any such depositions.

**Intervenor's Position:** As of now, Intervenor knows of no reason why Federal Rule of Civil Procedure 5.2 would be insufficient to protect minor Plaintiffs' interests.

7. **State the parties' best estimate as to the number of days reasonably necessary to fully try the case.**

Intervenor believes a trial may take as many as five days. Plaintiffs believes a trial would take no more than three days.

8. **State whether 90 days—measured from the Case Management Hearing—is a sufficient amount of time to Add Parties and/or Amend Pleadings.**

   The deadline for adding parties and amending pleadings has passed, per the Amended Phase I Case Management Order entered on August 29, 2025. *See* ECF No. 101.

9. **Settlement Prospects.**

   The Parties agree that settlement is unlikely.

   Intervenor believes, however, that if the proceedings in the district court were stayed pending the preliminary-injunction appeal, it is possible the case could be resolved without further proceedings in the district court. *See* ECF No. 127, at 5 n.2.

10. **Special Issues and Schedules**

    The Parties confirm that the following special issue applies:

      _X_ Federal Jurisdiction is Disputed. See attached Schedule B.
      ___ Action removed from state court and Plaintiff's Complaint does not specifically allege damages in excess of $75,000.00.
      ___ Diversity Jurisdiction case where any party is a non-corporate entity (*i.e.* LLCs, LLPs, General Partnerships, Trusts, Estates, etc.).
      ___ Original action filed in this Court based on Diversity Jurisdiction where Plaintiff has named one or more "John Doe" Defendant(s). ).
      ___ Complaint contemplates certification of a Rule 23 Class Action and/or a Collective
      ___ Action pursuant to the Fair Labor Standards Act.
      ___ Complaint seeks recovery for personal injuries and/or wage loss.

11. **Have all corporate parties filed the disclosure statement contemplated by Fed. R. Civ. P. 7.1?**

    Not applicable in this case.

12. **Magistrate Judge Jurisdiction. Counsel affirm they have discussed with their clients and each other the option of consenting to Magistrate Judge jurisdiction.**

    The parties have conferred and report the following:

      **_____ The parties, by their signatures below, stipulate and consent to Magistrate Judge jurisdiction.**

      **_X_ The parties do not consent to Magistrate Judge jurisdiction.**

## Schedule B
## Federal Jurisdiction Disputed

1.  The parties shall jointly and concisely state the jurisdictional issue or dispute in a non-argumentative fashion.

As stated in earlier motions and briefing—*see* ECF Nos. 49, 50, 52, 53, 105, 106—Defendants and Intervenor contend that the Court lacks Article III jurisdiction on standing and ripeness grounds for some Plaintiffs' claims. As stated in earlier briefing—*see* ECF No. 58—Plaintiffs contend that this Court has Article III standing and there are no jurisdictional barriers to ruling on the merits of Plaintiffs' claims.

2.  The party raising a jurisdictional defect (resisting federal jurisdiction) shall provide a statement, not to exceed one double-spaced page, setting forth the factual and legal basis of its position.

Intervenor asserts all original Plaintiffs lack standing for both their Establishment Clause and Free Exercise Clause claims and that those claims are unripe. They have not identified a cognizable injury on the Establishment Clause claim because they have not alleged they would have a "direct and unwelcome personal contact" with a Ten Commandments display because they did not allege any displays would or likely would be posted. *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012). For another, their alleged injuries were based on guesswork about who and when a display may be posted and what the displays and context would look like. This also prevents them from showing a cognizable injury for their free exercise claim, because they cannot show a hypothetical future display will compel them to or prohibit them from engaging in any religious exercise, *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017), nor have they shown that mere exposure to a hypothetical display will substantially interfere with their right to direct the religious upbringing of their children. Both of original Plaintiffs' claims also have traceability and redressability issues. Original Plaintiffs do not know when or how Defendants

10

may implement Act 573, including whether they will add context to the displays that would mitigate Plaintiffs' alleged concerns about the future displays, so the "causal link" between the alleged injury and Defendants "is too speculative" to establish standing. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 390 (2024). Original Plaintiffs have thus failed to trace their alleged injury to Defendants as opposed to the Act itself. *See Collins v. Yellen*, 594 U.S. 220, 243 (2021).

      3.    The responding party (seeking to establish federal jurisdiction) shall provide a statement, not to exceed one double-spaced page, setting forth the factual and legal basis of its position.

As this Court found based on proof presented at the preliminary-injunction hearing, there is a substantial and imminent threat of harm to Plaintiffs: The "*de minimis* amount [for the Ten Commandments posters] is not only likely but *extremely* likely to be raised once Act 573 goes into effect." ECF No. 71 at 19. As Plaintiffs argued in earlier briefing, *see* ECF No. 58 at 4–27, and as this Court held in its order granting a preliminary injunction, the "Supreme Court's recent decision in *Mahmoud v. Taylor* supports Plaintiffs' argument that there is no need to 'wait and see the context' before seeking a preliminary injunction." ECF No. 71 at 20. Indeed, "on August 1, 2025, Fayetteville School District 1 received *hundreds* of donated Ten Commandments posters." *Id.* at 17. Moreover, Conway School District No. 1 and Lakeside School District No. 9 not only received donated Ten Commandments posters but have posted them.

11

Dated: October 29, 2025

Respectfully submitted,

By: John C. Williams
ARKANSAS CIVIL LIBERTIES UNION FOUNDATION, INC.
John C. Williams (ABN 2013233)
Shelby H. Shroff (ABN 2019234)
904 W. 2nd St.
Little Rock, AR 72201
(501) 374-2842
*john@acluarkansas.org*
*shelby@acluarkansas.org*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Daniel Mach*
Heather L. Weaver*
915 15th Street, NW, Suite 600
Washington, DC 20005
(202) 675-2330
*dmach@aclu.org*
*hweaver@aclu.org*

AMERICANS UNITED FOR SEPARATION OF CHURCH & STATE
Alex J. Luchenitser*
Amy Tai*×
Jess Zalph*
1310 L Street NW, Suite 200
Washington, DC 20005
(202) 466-7306
*luchenitser@au.org*
*tai@au.org*
*zalph@au.org*

FREEDOM FROM RELIGION FOUNDATION
Patrick C. Elliott*
Samuel T. Grover*
Nancy A. Noet*
PO Box 750
Madison, WI 53701
(608) 256-8900
*patrick@ffrf.org*
*sgrover@ffrf.org*
*noetn@ffrf.org*

12

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood
Janet A. Gochman*
Noah Gimbel*
Jordan T. Krieger*
Griselda Cabrera*
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
*jyoungwood@stblaw.com*
*jgochman@stblaw.com*
*noah.gimbel@stblaw.com*
*jordan.krieger@stblaw.com*
*griselda.cabrera@stblaw.com*

*Counsel for Plaintiffs*

\* Appearing *Pro Hac Vice*

× Admitted to practice in New York; not a member of the D.C. Bar

\*\*\*\*\*

Bequette, Billingsley & Kees, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com
Email: pbrick@bbpalaw.com

By:_____**Jay Bequette**_____
    Jay Bequette, Ark. Bar #87012
    W. Cody Kees, Ark. Bar #2012118
    Phillip M. Brick, Jr., Ark. Bar #2009116

And

Shastady R. Wagner, Ark. Bar No. 2019044
Conway School District
2220 Prince Street
Conway, AR 72034
Phone: (501) 450-4800
Email: wagners@conwayschools.info

13

*Attorneys for Conway School District*

*****

By: <u>Katherine C. Campbell</u>
FRIDAY, ELDREDGE & CLARK, LLP
Marshall S. Ney, Ark. Bar No. 91108
Katherine C. Campbell,
    Ark. Bar No. 2013241
Sarah P. Smith, Ark. Bar No. 2022189
3350 S. Pinnacle Hills Parkway, Ste. 301
Rogers, AR 72758
Office: (479) 695-6040
Facsimile: (501) 244-5389
mney@fridayfirm.com
kcampbell@fridayfirm.com
ssmith@fridayfirm.com

*Attorneys for Fayetteville School District, Springdale School District, Bentonville School District, and Siloam Springs School District*

*****

Tim Griffin, Attorney General

By: <u>Noah Watson</u>
Arkansas Attorney General's Office
Noah Watson, Ark. Bar No. 2020251
    Deputy Solicitor General
Laura Purvis, Ark. Bar No. 2023239
    Assistant Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
(501) 682-1019
(501) 682-2591 fax
noah.watson@arkansasag.gov
laura.purvis@arkansasag.gov

*Attorneys for Intervenor State of Arkansas, ex rel. Tim Griffin, Attorney General*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2025, I filed the foregoing on the CM/ECF system, which completed service upon counsel for Defendants and the State of Arkansas.

By: /s/ *John C. Williams*
John C. Williams