# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| SAMANTHA STINSON and JONATHAN STINSON, on behalf of themselves and on behalf of their minor children, A.R.S. and A.W.S.; STEPHEN CALDWELL, on behalf of himself and on behalf of his minor child, W.C.; JOSEPH ARMENDARIZ, on behalf of himself and on behalf his minor children, M.A. and W.A.; TALARA TAYLOR and SHANE TAYLOR, on behalf of themselves and on behalf of their minor children, K.T. and M.T.; CAROL VELLA, on behalf of herself and on behalf of her minor children, E.M.V. and N.M.V.; DANIEL RIX, on behalf of himself and on behalf of his minor children, A.R., J.R., and W.R.; and LEAH BAILEY, on behalf of herself and on behalf her minor children, C.T. and D.T., JULEE JAEGER, on behalf of herself and on behalf of her minor child; U.J.; APRIL CHRISTINE BERRY and KYLE BERRY on behalf of themselves and on behalf of their minor children, C.B. and K.B.; and CHRISTINE BENSON, on behalf of herself and on behalf of her minor child, B.B,  *Plaintiffs-Appellees,*  v.  FAYETTEVILLE SCHOOL DISTRICT NO. 1; SPRINGDALE SCHOOL DISTRICT NO. 50; BENTONVILLE SCHOOL DISTRICT NO. 6; SILOAM SPRINGS SCHOOL DISTRICT NO. 21; CONWAY SCHOOL DISTRICT NO. 1; and LAKESIDE SCHOOL DISTRICT NO. 9,  *Defendants,*  STATE OF ARKANSAS, *ex rel.* TIM GRIFFIN, ATTORNEY GENERAL,  *Intervenor.* | CIVIL ACTION NO. 5:25-CV-05127 |

**OPPOSITION TO THIRD SET OF PLAINTIFFS' MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

As binding Supreme Court precedent proclaims, the Ten Commandments have historical significance and are "one of the foundations of our legal system." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 53 (2019). Unsurprisingly, Ten Commandments displays and depictions of Moses have been common throughout government buildings, and Supreme Court opinions have long "recognized the role the Decalogue plays in America's heritage." *Van Orden v. Perry*, 545 U.S. 677, 689 (2005) (plurality). Continuing this tradition, the Arkansas Legislature enacted Act 573, which provides that "a historical representation of the Ten Commandments" will be posted in public-school classrooms and libraries if funds are donated for that purpose or a display is donated. Ark. Code Ann. § 1-4-133(a)(1)(B)(i)-(ii); *see id.* -133(a)(1), -133(b).

Before a single display had been posted, much less donated, and before anyone knew what an Act 573 display would look like or the surrounding context, the original plaintiffs sued four school districts. ECF No. 2. They argued that Act 573's implementation will necessarily violate their rights under the Establishment Clause and Free Exercise Clause and requested a preliminary injunction, ECF No. 9, which this Court granted, ECF No. 71. Accordingly, the four school districts were "preliminarily enjoined from complying with Act 573 of 2025 by displaying the Ten Commandments in public elementary- and secondary-school classrooms and libraries" in those four school districts. *Id.* at 35.

Subsequently, six additional plaintiffs joined the suit after a different school district posted Act 573 displays, arguing that the posting of those displays violated the Establishment Clause and their free exercise rights. ECF No. 91. They also

1

requested a temporary restraining order and preliminary injunction. *Id.* This Court expeditiously granted the temporary restraining order, ECF No. 93, and then converted it into a preliminary injunction, ECF No. 111.

Now two more plaintiffs have joined this suit, claiming that another school district (Lakeside School District No. 9) violated the Establishment Clause and their free exercise rights by posting Act 573 displays. ECF No. 134. And they too requested a temporary restraining order and a preliminary injunction. *Id.* This Court granted them a temporary restraining order, and in accordance with this Court's order, Intervenor now submits this "briefing to address why the existing preliminary injunction should not be modified to include Defendant Lakeside School District No. 9." ECF No. 137.

As Intervenor has already explained at length, Act 573 is constitutional. It has none of the hallmarks of a religious establishment and is consistent with historical practice and current precedent. And there is no binding case suggesting that a passive display that does not compel anyone to engage in a religious exercise or prohibit anyone from doing so can violate a person's free exercise rights. Although this Court has previously rejected Intervenor's arguments, it is not bound by its earlier preliminary determinations in deciding the Benson Plaintiffs' preliminary-injunction motion. *See* ECF No. 107 at 1–2. That is especially true because free exercise claims are highly fact-specific and an opinion on which Plaintiffs heavily relied for their

Establishment Clause claims has been vacated.[1] This Court should deny the most recent preliminary-injunction motion.

## I. THE NEWEST PLAINTIFFS CANNOT SHOW THEY ARE ENTITLED TO A MODIFICATION OF THE PRELIMINARY INJUNCTIONS.

The newest Plaintiffs cannot show they are entitled to the "extraordinary remedy" of a preliminary injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). They have failed to make a "clear showing" of the requisite four factors: (1) that they are "likely to succeed on the merits," (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [their] favor," and (4) "that an injunction is in the public interest." *Id.* at 20, 22.

As a preliminary matter, Intervenor has appealed the Court's earlier preliminary-injunction orders (and the intertwined order denying the motion to dismiss), ECF Nos. 78, 117, so this Court lacks authority to modify the earlier preliminary injunctions that are the subject of those appeals, *see, e.g.*, *State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1106 (8th Cir. 1999). This Court should thus not modify the existing injunctions to include Lakeside.

---

[1] Citations to the Fifth Circuit's opinion in *Roake v. Brumley*, 141 F.4th 614 (5th Cir. 2025), are found passim in one of Plaintiffs' briefs, ECF No. 58 at ix, and this Court cited *Roake* in its initial preliminary-injunction decision, *see, e.g.*, *Stinson v. Fayetteville Sch. Dist. No. 1*, No. 5:25-CV-5127, 2025 WL 2231053, at *14 (W.D. Ark. Aug. 4, 2025). In *Roake*, the Fifth Circuit concluded a Louisiana law that is similar to Act 573 likely violates the Establishment Clause and affirmed the district court's preliminary injunction. *See* 141 F.4th at XX. But the Fifth Circuit has vacated that opinion and granted rehearing en banc, *see Roake v. Brumley*, No. 24-30706, 2025 WL 2856550, at *1 (5th Cir. Oct. 6, 2025), which means that the preliminary injunction issued by the district court in that case may soon be vacated.

To the extent the Court is considering issuing a new preliminary injunction, it should not do so for the reasons explained in prior briefing.[2] The newest Plaintiffs, like the earlier Plaintiffs, have failed to show likelihood of success on the merits. Act 573's requirement that schools post a "historical representation of the Ten Commandments" with a nonsectarian version of the text, Ark. Code Ann. § 1-4-133(a)(1)(B) (2025),[3] fits comfortably within historical practices and does not violate the Establishment Clause. Plaintiffs' contrary argument relies on abrogated precedent, a misinterpretation of the Establishment Clause, and a distorted view of history.

---

[2] To promote efficiency, Intervenor incorporates by reference all the arguments and authorities in its prior filings, including its motion to dismiss, brief in support of its combined motion to dismiss and preliminary-injunction opposition, reply in support of its motion dismiss, and its earlier opposition to the motion for a temporary restraining order and preliminary injunction, as well as its arguments that the expert report and testimony should be excluded. *See* ECF Nos. 52–55, 65, 107. To the extent the Act 573 displays were posted in B.B.'s classrooms, Intervenor does not reassert the same standing and ripeness arguments for the Benson Plaintiffs. But to the extent Benson Plaintiffs rely on speculative fears about conversations that Act 573 may prompt, Benson Plaintiffs have not established standing for their free exercise claims.

[3] Binding caselaw demonstrates that Act 573's text is nonsectarian because it is nearly identical to the text that was approved in prior cases, *compare Van Orden*, 545 U.S. at 707 (Stevens, J., dissenting), *and ACLU Neb. Found. v. City of Plattsmouth*, 186 F.Supp.2d 1024, 1028 (D. Neb. 2002), *rev'd* 419 F.3d 772 (8th Cir. 2005) (en banc), *with* Ark. Code Ann. § 1-4-133(a)(1)(B)(iii), and that text was specifically crafted to be a compromise between the Jewish, Protestant, and Catholic versions, which is why it has more than ten commands, *see Van Orden*, 545 U.S. at 701 (Breyer, J., concurring in the judgment); *City of Plattsmouth*, 419 F.3d at 773 & n.2; *see also* 57-1, 121 at 35–39. Moreover, the only way Act 573's text departs from the text at issue in *Van Orden* is that it omits some capitalization that could be viewed as highlighting the religious aspect of the text, *Van Orden*, 545 U.S. at 739 (O'Connor, J., dissenting), demonstrating the Arkansas's Legislature's intent to recognize the historical significance of the Ten Commandments, not proselytize.

4

The newest Plaintiffs likewise cannot establish likelihood of success on their free exercise claims. Like the earlier Plaintiffs, the Benson Plaintiffs cannot show that the Ten Commandments display will compel them to engage in a religious exercise or that it prohibits them from engaging in any religious exercise, *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017), nor have they shown that mere exposure to a passive display will substantially interfere with Christine Benson's right to direct the religious upbringing of B.B. or with B.B.'s free exercise rights. Indeed, "the Ten Commandments are part of [the Bensons'] faith system," ECF No. 133-1, so it is even more true for them than some of the other Plaintiffs that a passive Ten Commandments display will not substantially interfere with Christine's ability to direct the religious upbringing of her child or B.B.'s free exercise rights. Their argument that the Act 573 displays will violate her and B.B's free exercise rights because the displays will cause teachers to attempt to religiously indoctrinate B.B. also fails. This argument is based on complete speculation. Indeed, Christine notably does not claim that any of her alleged fears about teacher indoctrination have occurred even though she claims that Act 573 displays have been posted in B.B.'s classrooms since September. ECF No. 133-1 at ¶ 4. Unlike *Mahmoud v. Taylor* where the challenged material was curricular material and teachers were instructed to "reprimand any children who disagree[d]" with certain viewpoints, 145 S. Ct. 2332, 2356 (2025); *see id.* at 2344–45, the Act 573 displays are passive, are not part of the curriculum, and can convey a host of messages, *see Van Orden*, 545 U.S. at 701–02 (Breyer, J., concurring in the judgment) (explaining how the Ten Commandments "[i]n certain contexts" can convey

5

"not simply a religious message but also a secular moral message (about proper standards of social conduct)" and "a historical message (about a historic relation between those standards and the law)"). Benson Plaintiffs have thus failed to even establish standing for their free exercise claims to the extent they rely on speculative fears about conversations that Act 573 may prompt. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) (noting its reluctance "to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment").

Benson Plaintiffs also fail to show that they will suffer irreparable harm absent an injunction or that the balance of equities and public interest weigh in favor of issuing an injunction. This Court should therefore deny Benson Plaintiffs' motion for a preliminary injunction notwithstanding its prior decisions. Its prior decisions were preliminarily decisions, and nothing precludes this Court from changing course, especially given the "fact-intensive," and plaintiff-specific nature of free exercise claims. *See Mahmoud*, 145 S. Ct. at 2353.

## II. THIS COURT LACKS THE AUTHORITY TO GRANT THE REQUESTED INJUNCTION.

Even if the Benson Plaintiffs had shown entitlement to a preliminary injunction, this Court lacks the authority to grant the broad injunctive relief that they seek. Benson seek an injunction that would prohibit Lakeside from complying with Act 573 in every school and classroom in the district—even in schools where her child does not attend and in classrooms that her child would never enter. This request flies in the face of well-established precedent that "that injunctive relief should be no more

6

burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *accord Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) ("[T]he question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*.").

Benson Plaintiffs have not shown that Christine or B.B. will be injured in any way by a display that is not in B.B's classrooms, nor have they alleged, much less offered evidence, that B.B. ever goes into any public schools other than B.B.'s own. Accordingly, Benson Plaintiffs have not shown why they would not receive complete relief if Lakeside were preliminarily enjoined from enforcing Act 573 only in B.B.'s classrooms and the library at B.B.'s school. Because injunctive relief "must be tailored to remedy specific harm [allegedly] shown," *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982), this Court would be exceeding its authority if it grants the broad injunctive relief requested. Even if the Court agrees with Benson Plaintiffs on the preliminary-injunction factors, it can only preliminarily enjoin Lakeside from posting Act 573 displays in B.B's classrooms and the library at B.B.'s particular school.

## CONCLUSION

For the reasons above and in prior briefing, the Court should deny Benson Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

TIM GRIFFIN
Attorney General

By: Noah P. Watson
Ark. Bar No. 2020251
Deputy Solicitor General

Arkansas Attorney General's Office
101 West Capitol Avenue
Little Rock, AR 72201
(501) 682-1019
(501) 682-2591 fax
Noah.Watson@ArkansasAG.gov

*Counsel for State of Arkansas, ex rel.
Tim Griffin, Attorney General*